**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

NICHOLAS C.,

                                Plaintiff,

v.                                                              No. 6:23-CV-00838
                                                                (TJM/CFH)

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.
_____

**APPEARANCES:**                               **OF COUNSEL:**

OFFICE OF PETER W. ANTONOWICZ          PETER W. ANTONOWICZ, ESQ.
_Attorney for Plaintiff_
138 W. Dominick St.
Rome, New York 13440


SOCIAL SECURITY ADMINISTRATION          JASON P. PECK, ESQ.
OFFICE OF GENERAL COUNSEL
_Attorney for Defendant_
6401 Security Boulevard
Baltimore, Maryland 21235

**CHRISTIAN F. HUMMEL**
**United States Magistrate Judge**

<u>**REPORT-RECOMMENDATION & ORDER**</u>

        This matter was referred to the undersigned for report and recommendation by

the Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28

U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.  This case has

proceeded in accordance with General Order 18 of this Court which sets forth the

procedures to be followed when appealing a denial of Social Security benefits.  Plaintiff

filed a motion for judgment on the pleadings, defendant cross-moved, and plaintiff filed

a reply.  *See* Dkt. Nos. 14, 15, 16.  Oral argument was not heard.  For the reasons

discussed below, the undersigned recommends the Commissioner's decision be

affirmed and the Complaint (Dkt. No. 1) be dismissed.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff[1] was born on July 17, 1984.  T at 443.[2]  Plaintiff completed two years of

college in 2005.  T. at 470.  Plaintiff filed for supplemental security income ("SSI") and

disability insurance benefits ("DIB") on November 1, 2019, alleging a disability onset

date of July 16, 2019.  T. at 443.  He alleges disability as a result of anxiety, depression,

and post-traumatic stress disorder.  T. at 469.

Plaintiff's application was initially denied on February 27, 2020.  T. at 237, 243.

He submitted a request for reconsideration on April 26, 2020.  T. at 274.  His claim was

reconsidered and denied on July 15, 2020.  T. at 255, 263.  Plaintiff requested a hearing

before an administrative law judge on August 12, 2020.  T. at 302.  The hearing,

originally scheduled for December 24, 2020, was postponed several times and

rescheduled for July 27, 2021.  T. at 320, 339, 348, 379, 401.  ALJ Bruce Fein ("the

ALJ") conducted the hearing by video and heard the testimony of Plaintiff, represented

by attorney Peter Antonowicz, and Vocational Expert Meredith Ross ("the VE").  T. at

190-231.

---

[1] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff by first name and last initial.

[2] The Administrative Transcript is found at docket number ("Dkt. No.") 8.  The Court will refer to citations from the Administrative Transcript as "T." and will cite to the Administrative Transcript's Bates-stamped page numbers, rather than the pagination generated by the Court's electronic filing system ("CM/ECF").  All other citations to docket entries refer to the pagination generated by CM/ECF, located at the header of each page.

Plaintiff testified to experiencing a racing heart, blurry and double vision, dizziness entering work during an incident in 2019, and panic attacks upon approaching his former workplace since then.  T. at 204-05.  He also testified that he has been hospitalized approximately fifteen times because of his anxiety, and that physical activity is a trigger for his anxiety attacks.  T. at 205, 208-09.

On August 4, 2021, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act ("SSA").  T. at 26.  Plaintiff requested that the Social Security Appeals Council review the ALJ's decision on September 9, 2021.  T. at 441.  The ALJ's decision became the final decision of the Commissioner for Social Security when the Appeals Council denied Plaintiff's request for review on May 23, 2023.  T. at 1.  Plaintiff timely commenced this action on July 13, 2023, challenging the Commissioner's decision.  Dkt. No. 1 at 1.

## II. APPLICABLE LAW[3]

### A. Scope of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1388(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 985-86 (2d Cir. 1987); *Berry v. Schweiker*, 675 F.2d

---

[3] Although the Supplemental Security Income program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

464, 467 (2d Cir. 1982). Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citation, emphasis, and internal quotations marks omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson*, 817 F.2d at 986). However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

**B. Standard for Benefits**

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous

period of not less than 12 months[.]" *Id.* § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  *See id.* § 423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  *Id.* § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  *Ventura v. Barnhart*, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe

> impairment, he [or she] has the residual functional capacity
> to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past
> work, the [Commissioner] then determines whether there is
> other work which the claimant could perform.

*Berry*, 675 F.2d at 467 (spacing added).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  *See DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing *Berry*, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  *Id.* (citing *Berry*, 675 F.2d at 467).

### III. THE ALJ'S DECISION

In his August 4, 2021, decision, the ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims.  T. at 15-16.  As an initial matter, the ALJ determined that Plaintiff meets the insured status requirements of the SSA through December 31, 2023.  T. at 17.  At Step One, the ALJ determined that Plaintiff had not been engaged in substantial gainful activity since July 16, 2019.  *See id*.  At Step Two, the ALJ determined that Plaintiff has the following severe impairments: "panic disorder, post-traumatic stress disorder (PTSD), and unspecified bipolar disorder."  *Id*.  At Step Three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 ("the Listings").  *Id*. at 17-21.

At Step Four, the ALJ found, based on the above-stated impairments, that Plaintiff has the RFC to perform "medium work" with the following non-exertional limitations: "Mentally, the claimant can occasionally interact with co-workers, supervisors, and the public. He also requires a low stress job, which is defined as involving only occasional decision-making, changes in work setting, and use of judgment." T. at 21. The ALJ determined that Plaintiff could return to his past relevant work as a "store laborer." *Id.* at 25. Thus, the ALJ determined that Plaintiff has not been under a disability, as defined in the SSA, from July 16, 2019, to the date of the ALJ's decision, August 4, 2021. *Id.* at 26.

## IV. ARGUMENTS

First, Plaintiff argues that the Commissioner erred when he failed to review new evidence submitted to the Appeals Council alongside Plaintiff's request for review of the ALJ's decision. *See* Dkt. No. 14 at 15. Second, Plaintiff argues that the ALJ improperly discounted the opinions of lay witnesses. *Id.* at 17. Specifically, Plaintiff contends that the ALJ did not adequately explain why he afforded little weight to statements from Plaintiff's friends. *Id.* at 17-18. Third, Plaintiff argues that the ALJ erred in assessing the consistency of his symptoms with the medical evidence of record. *Id.* at 18-19. Plaintiff contends that the ALJ further failed to appropriately consider his activities of daily living ("ADLs"). *Id.* at 20-21. Fourth, Plaintiff argues that the ALJ failed to appropriately consider the persuasiveness of the medical opinions. *Id.* at 21-22.

Defendant argues that Plaintiff is not entitled to a new administrative hearing based on evidence provided to the Appeals Council. Dkt. No. 15 at 6-7. Defendant also argues that this Court may only a review a "final decision of the Commissioner of

Social Security," and that a denial of review by the Appeals Council is not such a decision because it does not reach the merits of Plaintiff's claim. *Id.* at 7-8. Defendant notes that, in such a case as this, a district court must consider the entire administrative record, including new evidence, according to the substantial evidence standard. *Id.* at 8-9. Defendant argues next that the ALJ's assessment of the persuasiveness of the opinion evidence, as well as his consideration of Plaintiff's subjective complaints, is supported by substantial evidence. *Id.* at 9-20. Defendant argues specifically that the ALJ adequately addressed Plaintiff's testimony regarding his subjective symptoms with contradictory information in the record. *Id.* at 10-13. Defendant contends that the ALJ appropriately considered lay testimony from Plaintiff's friends, and that the ALJ's reasoning can be gleaned from his references to an earlier discussion of the record. *Id.* at 14-15. Finally, Defendant asserts finally that *Lesterhuis v. Colvin*, which Plaintiff relies on for the proposition that "this court is not in a position to make factual and medical determinations about the evidence before the agency," is limited to the facts of the case and distinguishable because the *Lesterhuis* Court was applying the pre-2017 treating physician rule. *Id.* at 19-20; Dkt. No. 14 at 16.

In reply, Plaintiff acknowledges that his "brief erroneously alleged that the Appeals Council failed to acknowledge or address the additional evidence that was provided to the ALJ prior to the date of the decision and resubmitted to the Appeals Council at the time of the request for review." Dkt. No. 16 at 1. Plaintiff concedes that the Appeals Council "did, in fact, acknowledge receipt of this evidence and addressed [it] by finding that this evidence 'does not show a reasonable probability that it would change the outcome of the decision.' They also declined to exhibit this evidence." *Id.*

(quoting T. at 2.)  However, Plaintiff reiterates his argument that the new evidence forms part of the present administrative record, and remand is appropriate because neither the ALJ nor the Appeals Council have made factual determinations related to it.  *Id.* at 2-3.

## V. ANALYSIS

### 1. Appeals Council's Denial of Review

42 U.S.C. § 405(g) confers review of "any final decision of the Commissioner of Social Security made after a hearing to which [the prospective plaintiff] was a party."  42 U.S.C. § 405(g) (emphasis added).  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  *Id.* (emphasis added).  The regulations clarify that "[t]he Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised."  20 C.F.R. § 404.981.  Further, "[a] claimant may obtain judicial review of a decision by an administrative law judge if the Appeals Council has denied the claimant's request for review, or a decision by the Appeals Council when that is the final decision of the Commissioner."  20 C.F.R. § 422.210(a).  Thus, a federal district court may review any "final decision of the Commissioner of Social Security," meaning "the decision of the administrative law judge" if the Appeals Council has denied a request review.  42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

Here, the Appeals Council denied Plaintiff's request for review without issuing a decision of its own.  T. at 1 (noting ". . . we have denied your request for review. This means that the Administrative Law Judge's decision is the final decision of the

Commissioner of Social Security in your case.").  "When the Appeals Council grants review, the decision of the Appeals Council is the final decision of the Secretary. *See* 20 C.F.R. §§ 404.981, 416.1481.  However, if the Appeals Council denies review, the ALJ's decision becomes the Secretary's final decision. *See* §§ 404.981, 416.1481. The final decision of the Secretary is subject to judicial review. 42 U.S.C. § 405(g)."  *Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996).

### 2. New Evidence

In *Perez v. Chater*, the United States Court of Appeals for the Second Circuit held that "new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision."  *Perez*, 77 F.3d at 45.  The *Perez* Court was persuaded by the reasoning of the Tenth Circuit in *O'Dell v. Shalala*, which noted "that 20 C.F.R. § 404.970(b) expressly authorizes claimants to submit new evidence to the Appeals Council, and that ignoring this evidence on review might undermine the purpose of the regulation."  *Id.* (citing *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994)).  There was no "good cause requirement" in the version of 20 C.F.R. § 404.970(b) that the *O'Dell* and *Perez* courts considered.  *See* 52 Fed. Reg. 4004 (Feb. 9, 1987).  20 C.F.R. § 404.970(b) was amended in 2017 to add a "good cause" requirement.[4]  81 Fed. Red. 90994 (Dec. 16, 2016).  Thus, the Tenth Circuit overturned *O'Dell* in *Sewell v. Comm'r of Soc. Sec.*, holding "new evidence submitted to the

---

[4] 20 C.F.R. § 404.970(a) was amended again in 2020, and the 2020 version is currently in effect.  *See* 85 Fed. Reg. 73157 (Nov. 16, 2020).  The 2020 amendment clarified that "[t]he Appeals Council will review a case . . . if – (1) There appears to be an abuse of discretion by the administrative law judge or administrative appeals judge who heard the case[]"  20 C.F.R. § 404.970(a).  The 2017 version did not address abuses of discretion by administrative appeals judges.  *See* 81 Fed. Reg. 90994 (Dec. 16, 2016).

Appeals Council is no longer automatically included in the substantial evidence analysis." *Sewell v. Comm'r of Soc. Sec.,* No. 20-1409, 2021 WL 3871888, at *5 (10th Cir. Aug. 31, 2021).  The Second Circuit has not overturned *Perez*, the Appeals Council did not deny review on the basis of a lack of good cause, and Defendant does not now argue that Plaintiff had no good cause for failing to produce this evidence earlier.  Thus, Plaintiff's new evidence forms part of the administrative record in the present case.  *See* T. at 1-4; Dkt. No. 15 at 4-5; *Perez*, 77 F.3d at 45.

"When the Appeals Council denies review after considering new evidence, we simply review the entire administrative record, which includes the new evidence, and determine, as in every case, whether there is substantial evidence to support the decision of the Secretary." *Perez*, 77 F.3d at 46.  Thus, the ALJ's decision in the present case is reviewed against the administrative record, including all evidence Plaintiff submitted to the Appeals Council, according to the substantial evidence standard.

Plaintiff cites *Lesterhuis v. Colvin* and *Burgess v.* Astrue, to support his argument that "this court is not in a position to make factual and medical determinations about the evidence before the agency.  Neither the ALJ nor the Appeals Council analyzed the substance of this additional evidence.  As a result, the commissioner's decision is not supported by the substantial evidence of record." Dkt. No. 14 at 16 (citing *Lesterhuis v. Colvin*, 805 F.3d 83, 89 (2d Cir. 2015); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).  In both *Lesterhuis* and *Burgess*, the Second Circuit was applying a "'treating physician rule of deference to the views of the physician who has engaged in the primary treatment of the claimant.'" *Burgess*, 537 F.3d at 128 (quoting *Green-Younger*

*v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)).  In *Lesterhuis* and *Burgess*, the new

evidence submitted to the Appeals Council was treating source opinions; further

proceedings were, therefore, required to determine if these opinions deserved

controlling weight.  *Lesterhuis*, 805 F.3d at 88-89; *Burgess*, 537 F.3d at 127-29, 132.

The "treating physician rule" has been supplanted by the persuasiveness analysis

explained in 20 C.F.R. §§ 404.1520c, 416.920c.  "*Relationship with the claimant*" is now

just one of five factors that an ALJ must consider; nor is it one of the "most important

factors," which would be "supportability [] and consistency []."  20 C.F.R. §§

404.1520c(b)(2), (c)(3), 416.920c(b)(2), (c)(3) (internal citations omitted).  Remand is,

therefore, not required on these grounds.

### 3. New Evidence Submitted to the Appeals Council

Evidence from Rome Hospital include records of eight of Plaintiff's visits to the

Emergency Department.  Plaintiff visited the Emergency Department on 2/11/2021,

complaining of "vomiting blood."  T. at 51.  Plaintiff reported "generalized stomach pain,"

rating it at "5/10."  *Id.*  Plaintiff underwent an electrocardiogram test during this visit.

*See* T. at 68-75.  Plaintiff also underwent an abdomen and pelvic CT scan without

contrast during this visit.  *See* T. at 61-63.  In the section describing Plaintiff's medical

history, John R. Restivo, M.D., noted "Abdominal pain. Nausea. Vomiting. Diarrhea.

Vomiting blood on Monday. Generalized abdominal pain. Moderate pain. Chills. Anxiety.

Current smoker. Hypertension. Acute presentation. Initial encounter."  T. at 61.  Dr.

Restivo found "a small spenule" on Plaintiff's spleen; Plaintiff's "right kidney is markedly

atrophic with a focal cortical calcification and no hydronephrosis. Kidney is mildly

prominent likely related to hypertrophic change. There is no hydronephrosis. There is no

renal calculus or worrisome renal lesion"; Plaintiff had "[n]o bowel obstruction. There is diverticulosis but no diverticulitis. There is no acute appendicitis. There is no free air. There is no free fluid"; there was a "small fat-containing umbilical hernia" on Plaintiff's abdominal wall, but "no inguinal hernia or inguinal lymphadenopathy"; and finally, "[d]egenerative changes [were] seen in the spine."  T. at 61-62.  Plaintiff visited the Emergency Department on 3/15/2021, complaining of "abdominal pain and nausea."  T. at 47.  Plaintiff's urine was collected and tested during this visit.  *See* T. at 92.  On 4/16/2021, Plaintiff was seen in the Emergency Department for an "[a]nxiety reaction."  T. at 98; *see* T. at 44-45.  On 4/23/2021, Plaintiff was seen in the Emergency Department for a "[p]anic attack."  T. at 97.  Plaintiff underwent another electrocardiogram test on 4/24/2021.  T. at 66-67; *see* T. at 40-43.  Plaintiff underwent a biopsy on 5/7/2021 and received the results on 5/10/2021.  T. at 56-59.  Tissue from Plaintiff's "duodenum – 3rd portion" displayed "mild non-specific chronic inflammatory cell infiltrates," and tissue from his "gastric antrum" displayed "focal surface erosion and mild hyperemia."  T. at 58.  On 5/30/2021, Plaintiff was seen in the Emergency Department for "[h]ypoglycemia without coma. Not associated with type 1 diabetes or type 2 diabetes."  T. at 95; *see* T. at 38-39.  Plaintiff was instructed to begin a "Strict Anti-Reflux" diet, and prescribed Omeprazole and Famotidine.  T. at 96.  Plaintiff was seen in the Emergency Department on 6/14/2021 for an "[a]nxiety reaction."  T. at 94; *see* T. at 36-37.  Plaintiff was seen in the Emergency Department on 7/5/2021 for an "[a]typical chest pain."  T. at 93; *see* T. at 32.  Plaintiff's blood and urine were collected and tested during this visit.  *See* T. at 76-91.  Plaintiff also underwent an electrocardiogram test during this visit.  *See* T. at 64-65.  Plaintiff underwent a "[c]hest

portable single view" exam during this visit. T. at 60. Najmus Saqib, M.D., noted that Plaintiff's "[h]eart size upper limits of normal." T. at 60.

Evidence from Mohawk Valley Health Systems document Plaintiff's follow-up appointments after visits to the Emergency Department. Plaintiff had a telephone appointment on 2/15/2021, following up on the visit where he reported vomiting blood. T. at 178. Plaintiff was "[p]ositive for dysphoric mood" and was "nervous/anxious." *Id.* Plaintiff was seen in person on 4/19/2021, following up on a visit to the Emergency Department for a panic attack. T. at 150. Plaintiff was "[p]ositive for syncope," "[p]ositive for dysphoric mood," and was "nervous/anxious." T. at 151. Plaintiff reported a "[r]acing heart," but during his physical exam his heart rate and rhythm were recorded to be "[n]ormal." *Id.* Plaintiff was seen for a "1 Month Followup Visit" on 5/17/2021, where he was "[n]egative for chest pain, palpations and leg swelling," and demonstrated "dysphoric mood. The patient is nervous/anxious." T. at 136. Plaintiff's psychiatric and behavioral symptoms had "[i]mproved" since the last visit. *Id.* Plaintiff was seen on 6/14/2021 to follow up on an Emergency Department visit caused by "an episode of low blood sugar." T. at 117. Plaintiff's cardiovascular and psychiatric/behavioral results were the same as from his 5/17/2021 visit, including the noted improvements. T. at 118. Plaintiff was seen again on 6/23/2021, to follow up on an Emergency Department visit caused by a panic attack. T. at 108. Plaintiff's cardiovascular results were the same as the last two visits. T. at 109. Plaintiff's psychiatric and behavioral results included the following note: "Continues to have panic attacks working on adjusting medication." *Id.*

The ALJ was aware that Plaintiff frequents the emergency room and considered his testimony that "[h]is panic attacks reportedly last 30-90 minutes, occur at least once a day, and are characterized by fear, rapid heartbeat, shortness of breath, feeling like he is dying, and a desire to have doctors around.  T. at 22 (citing T. at 205, 483-84). The ALJ considered that Plaintiff "does not drive very far or go more than a couple minutes from his house."  T. at 22 (citing T. at 206).  The ALJ also considered Plaintiff's testimony that his panic attacks are triggered when his "heart rate goes up."  T. at 21 (citing T. at 208-09).  The ALJ noted that Plaintiff's "mental status exams have been essentially normal."  T. at 23.  The new evidence presented to the Appeals Council comports with the medical evidence that the ALJ reviewed and discussed extensively. The ALJ's determinations, considered in light of this new evidence, are not so unavailing that "a reasonable factfinder would have to conclude otherwise."  *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012).  The new evidence does not, therefore, render the ALJ's decision unsupported by substantial evidence.

### 4. Plaintiff's Subjective Complaints

The ALJ concluded that "the claimant's allegations have been found to affect his ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence of record."  T. at 22.  Plaintiff argues first that this is a misapplication of the appropriate legal standard, and second that the ALJ "offered no specific reference to any evidence of record that was inconsistent with the plaintiff's allegations."  Dkt. No. 14 at 20-21.  The ALJ correctly stated and applied the applicable standard, and his determinations regarding Plaintiff's subjective symptomology and the lay testimony are supported by substantial evidence.

15

20 C.F.R. § 404.1529 requires an ALJ to "consider all [of a claimant's], including pain, and the extent to which [their] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. § 404.1529(a).  "In evaluating the intensity and persistence of [a claimant's] symptoms, including pain, [an ALJ] will consider all of the available evidence, including [a claimant's] medical history, the medical signs and laboratory findings, and statements about how [a claimant's] symptoms affect [them]."  *Id.*  Crucially, an ALJ is responsible for "determin[ing] the extent to which [a claimant's] alleged functional limitations can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence . . ." presented in a claim.  *Id.*

The ALJ correctly stated the applicable standard.  *See* T. at 21.  The ALJ noted that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  T. at 21 (citing 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p).  The ALJ related that he "must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities."  *Id.*  Plaintiff argues that this framing of the standard imposes a burden on the Plaintiff of full consistency with the record.  Dkt. No. 14 at 20 (arguing that "[n]owhere in the regulations in general, or in 20 CFR 404.1529 in particular, is it required that a claimant's allegations regarding symptoms be "fully" consistent with the objective evidence of record.")  The ALJ did not impose such a burden on Plaintiff; his recitation of the applicable standard follows the text of the regulations.

The ALJ's consideration of Plaintiff's subjective symptoms was made according to the correct legal standard and is supported by substantial evidence. The ALJ extensively discussed Plaintiff's statements and the medical evidence of record which he found inconsistent with them. *See* T. at 21-25. For instance, the ALJ noted that Plaintiff "considers his bed his 'safe zone' and lies there 15-20 hours a day." T. at 21 (citing T. at 208, 476.) Plaintiff testified to this fact at the administrative hearing, mentioned it in his Function Report, and the ALJ cited both of these instances in his Hearing Decision.[5] *Id.* The ALJ also noted that Plaintiff "reported having problems sleeping, paying attention, concentrating, completing tasks, getting along with other people, and handling stress or schedule changes." T. at 21.

Contrary to Plaintiff's arguments that "the ALJ offered no specific reference to any evidence of record that was inconsistent with the plaintiff's allegations," the ALJ extensively discussed the evidence he found to be inconsistent with Plaintiff's testimony. Dkt. No. 14 at 21; *see* T. at 22. The ALJ related that Plaintiff "testified that his heart rate and blood pressure go up whenever he does something physical," but "told his pulmonologist in April 2020 that he 'has a home gym that he uses daily for a total of two hours.'" T. at 22 (citing T. at 793.) Further, the ALJ considered that Plaintiff's "physical exams have been largely normal []. An echocardiogram and electrocardiogram performed in January 2020 were unremarkable [] and a Holter monitor did not reveal any significant cardiac arrhythmias []." T. at 22 (citing T. at 687-

---

[5] Plaintiff contends that the ALJ never considered this evidence. *See* Dkt. No. 14 at 11-12. Plaintiff states that "[t]he ALJ does not acknowledge that in [exhibit 3E, T. at 476-85] the plaintiff indicates that he lays in bed for 15 to 20 hours a day, that he has difficulty falling asleep due to racing thoughts, that despite the number of hours he spends lying in bed he only gets 4 hours of sleep a day due to his anxiety." *Id.* The ALJ did, however, acknowledge and consider this evidence. *See* T. at 21.

838, 951-973, 1036-1077, 693, 696-97, 1073.)  Despite Plaintiff's confirmation at the administrative hearing that his claim was "exclusively and primarily" based on his "mental health condition," the ALJ considered that Plaintiff has "a history of hypertension and obesity" and limited the RFC to medium exertion work.  T. at 194, 22.

Plaintiff's arguments amount to a disagreement over the ALJ's resolution of conflicting evidence.  The undersigned will not reweigh the evidence presented to the ALJ.  *See, e.g., Warren v. Comm'r of Soc. Sec*, No. 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing, . . . nor will it determine whether [the applicant] actually was disabled.  [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) (alteration in original)), *report-recommendation adopted by* 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016).

### 5. Statements from Plaintiff's Friends

Statements from third parties, such as those offered by Plaintiff's friends Dominick and Corinne F., are "*Evidence from nonmedical sources*" because they are "information or statement(s) from a nonmedical source [] about any issue in [the claim]." 20 C.F.R. § 404.1513(a)(4) (italics in original).  In addressing the consistency of a claimant's statements about their symptoms with the medical evidence, an ALJ must also consider "any description [a claimant's] medical sources or nonmedical sources may provide about how the symptoms affect [a claimant's] activities of daily living and [a claimant's] ability to work."  20 C.F.R. § 404.1529(a).  However, an ALJ is not required

to articulate their consideration of statements from a third party to the same degree as their consideration of a medical opinion or prior administrative medical finding. *See* 20 C.F.R. § 404.1520c. Further, an ALJ is barred from considering "[s]*tatements on issues reserved to the Commissioner*," including "[s]tatements that [a claimant is] or [is] not disabled . . . ." 20 C.F.R. § 404.1520b(c)(3)(i).

Dominick F. stated, in a letter to Plaintiff's representative, that he has "seen a dramatic change in" Plaintiff over the last two years; that he "can't physically leave his house"; "could no longer work his job"; and that that he once "had a panic episode" and had to be brought to the emergency room. T. at 534-35. Corinne F. stated, in a letter to Plaintiff's representative, that Plaintiff has "felt overwhelmed at times" and "it makes him nervous to drive and leave his home"; and that Plaintiff had "a panic episode at [her] home." T. at 536.

The ALJ discussed these letters tersely. *See* T. at 24-25. He noted that he had "considered the statements from the claimant's friends, Dominick and Corinne [F.]," and that it was "apparent from their very detailed statements that Mr. and Mrs. [F.] have known the claimant for many years and have had the opportunity to observe his behavior and functioning on at least some occasions since his alleged onset date." T. at 24. The ALJ stated, however, that "given their long friendship, there is also a strong potential for bias." T. at 24. The ALJ ultimately concluded that, although these statements "support a number of the claimant's allegations, they are persuasive only to the extent they are consistent with the other evidence of record." T. at 24-25. The ALJ's discussion of this evidence was not, and did not need to be, any more extensive: "where 'the evidence of record permits us to glean the rationale of an ALJ's decision, we

do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'" *Petrie v. Astrue*, 412 Fed. App'x 401, 407 (2d Cir. 2011).

These letters discuss one specific incident in which Plaintiff was transported to an emergency room because of a panic attack. The ALJ considered Plaintiff's own testimony on his history of emergency room visits, as well as Plaintiff's records from Rome Memorial Hospital's Emergency Department for the period from 4/16/2021 to 7/13/2021. T. at 20, 23-24 (citing T. at 190-231, 1036-1072.) These letters also discuss Plaintiff's social limitations, which Plaintiff testified about at the administrative hearing. *See* T. at 209-211. The ALJ also considered Plaintiff's consultative examination, where he reported "'some socialization.'" T. at 19 (quoting T. at 546.) At the consultative examination, Plaintiff stated that the source of his anxiety "had initially been social anxiety, [but] '[he] kinda kicked that,' stating that now the anxiety is not specific." T. at 545. These letters further address Plaintiff's difficulty leaving his home: the ALJ heard more detailed testimony on this issue from Plaintiff himself, and addressed it in the Hearing Decision. *See* T. at 18 (citing T. at 205-208.)

Although the ALJ's discussion of the lay testimony was curt, his decision "must be read as a whole." *Maria S. v. Kijakazi*, 3:21-CV-0177 (DEP), 2022 WL 4619861, at *5 (N.D.N.Y. Sep 30, 2022). A "searching review of the record" demonstrates that the ALJ considered the statements and thoroughly considered the issues raised in the lay testimony. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). This Court can "'glean the rationale of [the] ALJ's decision'" from his extensive discussion of Plaintiff's

testimony and the medical evidence of record.  *Cichocki v. Astrue*, 534 F. App'x 71, 76

(2d Cir. 2013) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).   It

was not error for the ALJ to accord less weight to the statements after acknowledging

their potential for bias.  *See John D. v. Comm'r of Soc. Sec.*, 18-CV-0751 (TWD), 2019

WL 6877974, at *6, 9-10 (N.D.N.Y. Dec. 17, 2019) (upholding the ALJ's findings,

including his affording little weight to statements from the plaintiff's friends and spouse

because they were sympathetic to plaintiff due to their relationships and were not

medical sources); *Russell v. Colvin*, 13-CV-1030 (MAD/CFH), 2015 WL 570828, at *17

(N.D.N.Y. Feb. 11, 2015) (finding no error in the ALJ's assigning no weight to third-party

statements because of the sources' interest in the case and because the ALJ had

explicitly considered that evidence as part of the overall record).

### 6. Persuasiveness of Medical Opinions

Plaintiff argues that the ALJ failed to correctly assess the persuasiveness of the

medical opinions, particularly in terms of supportability and consistency.  *See* Dkt. No.

14 at 21-23.  Plaintiff does not identify which medical opinions the ALJ failed to weigh

appropriately, instead noting that "[t]he ALJ's selective account of the medical record, as

set forth in the statement of facts, renders his determination of persuasiveness of

opinion evidence invalid."  *Id.* at 22.  Plaintiff is "attempting to characterize [his] claim

that the ALJ's determination was not supported by substantial evidence as a legal

argument in order to garner a more favorable standard of review."  *Pellam v. Astrue*,

508 F. App'x 87, 91 (2d Cir. 2013) (summary order).  The ALJ's discussion of the

medical record was not selective, with the sole exception of his brief discussion of the

lay testimony, and the ALJ extensively discussed the medical and nonmedical evidence

in Plaintiff's claim, including the medical opinions and prior administrative medical findings.

The ALJ discussed Ryan Mellon, LCSW-R's opinion, cosigned by Sheila Gallogly, NPP; NPP Gallogly's individual opinion; psychiatric consultative examiner Sara Long, Ph.D's report.; and two prior administrative medical findings by the state agency reviewing doctors J. May, Ph.D., and L. Dekeon, Ph.D.  *See* T. at 22-25.  The ALJ was "not fully persuaded by any of these medical opinions."  T. at 23.  He assigned a set of limitations lesser than those assessed by LCSW-R Mellon and NPP Gallogly, but greater than those assessed by Drs. May, Dekeon, and Long.  "The ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence."  *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

The ALJ began by considering LCSW-R Mellon's opinion, which "reports that claimant has 'marked' limitations for maintaining attention and concentration for extended periods, acting in coordination with, or in proximity to, others without being distracted by them, maintaining socially-appropriate behavior and adhering to basic standards of neatness and cleanliness, and for being aware of normal hazards and taking appropriate precautions [T. at 684-86]."  LCSW-R Mellon assigned "extreme" limitations in six sub-categories, namely: "performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances"; "sustaining an ordinary routine without special supervision"; "completing a normal day without interruptions from psychologically based symptoms"; "performing at a consistent pace without an unreasonable number and length of rest periods," "interacting

appropriate with the general public"; "responding appropriately to changes in the setting"; and "traveling in unfamiliar places or using public transportation." T. at 22 (citing T. at 684-85.) These limitations would present irregularly, causing Plaintiff to have "good days" and "bad days," they would leave Plaintiff off-task for 50% of the time, and cause him to miss "[m]ore than four days per month." T. at 686. Separate from that opinion, NPP Gallogly "opined that the claimant had a 'very Limited' ability to maintain attention/concentration, make simple decisions, interact appropriately with others, and functioning in a work setting at a consistent pace." T. at 23 (citing T. at 974-75.)

Consultative examiner Dr. Long "concluded from her exam that the claimant might have 'mild' limitations for regulating emotions." T. at 23 (citing T. at 547.) Contrary to LCSW-R Mellon's opinion, Dr. Long "found no evidence of limitations with respect to the claimant's ability to perform simple and complex tasks, make appropriate decisions, interact adequately with others, maintain attention and concentration, maintain a regular schedule, control behavior, maintain personal hygiene, and be aware of appropriate precautions." *Id.* The ALJ also noted a consistency between Dr. Long's opinion and the PAMFs, stating "that the claimant's mental impairments caused no more than 'mild' limitations and were therefore 'non-severe.'" T. at 23 (referencing T. at 235, 253.) While the ALJ did not "find the record to support the level of limitation proposed by" LCSW-R Mellon and NPP Gallogly, he found "the fact that the claimant has had ongoing mental health treatment, including some emergency room visits, inconsistent with a finding of no 'severe' mental impairments." T. at 23. The ALJ specifically found the opinions of LCSW-R Mellon and NPP Gallogly to be not well

supported, noting their "proposed limitations are speculative and unsupported by any explanation or specific evidence." T. at 24.

The ALJ articulated his consideration of "the most important factors" – supportability and consistency – in his assessment of the persuasiveness of the medical opinions. 20 C.F.R. § 404.1520c(b)(2). The ALJ addressed the lack of supporting evidence and explanations in LCSW-R Mellon and NPP Gallogly's opinions, as well as their inconsistency with medical record, to explain their low persuasive value. T. at 23-24. The ALJ also considered the consistency of the opinions and prior administrative medical findings with each other and Plaintiff's testimony, in addition to the medical record. *See id*. Plaintiff's argument regarding the ALJ's consideration of the medical opinions does not identify a specific error of law; it merely asserts that an earlier failure to meet the substantial evidence standard renders his consideration invalid. *See* Dkt. No. 14 at 21-23. As previously discussed, the ALJ's consideration of the record is supported by substantial evidence. There is no legal error in the ALJ's consideration of the opinion evidence. Therefore, remand is not required.

## VI. CONCLUSION

For the reasons discussed herein, the undersigned concludes that the ALJ's decision was based on correct legal standards and that substantial evidence supports his determination that Plaintiff was not under a disability within the meaning of the Social Security Act.

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, Defendant's motion for judgment on the pleadings (Dkt. No. 15) be **GRANTED**,

Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) be **DENIED**; and the complaint (Dkt. No. 1) be **DISMISSED**; and it is

      **ORDERED**, that the Clerk serve this Report-Recommendation & Order on the parties in accordance with the Local Rules.

      Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72

Dated: August 30, 2024
     Albany, New York

                                              _____
                                              Christian F. Hummel
                                              U.S. Magistrate Judge